# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **EMILY R. KELLY,** | ) | |
| Plaintiff, | ) ) ) | Case No. 2:04CV00065 |
| v. | ) ) | **OPINION** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,** | ) ) ) ) | By: James P. Jones<br>Chief United States District Judge |
| Defendant. | ) ) | |

In this social security case, I affirm the final decision of the Commissioner denying the plaintiff's claim for disability insurance benefits.

*I*

Emily R. Kelly filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) (West 2003 & Supp. 2005).

This court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether the correct law was applied. *See* 42

U.S.C.A. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). I do not re-weigh conflicting evidence, make credibility determinations, or substitute my judgment for that of the Commissioner. *See Hays*, 907 F.2d at 1456. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. *See id.*

The plaintiff applied for benefits on February 12, 2002,[1] alleging disability since June 4, 2001, and received a hearing before an administrative law judge ("ALJ") on January 30, 2003. By decision dated February 7, 2003, the ALJ found that the plaintiff was not disabled within the meaning of the Act because she retained the residual functional capacity to perform a full range of light work and, accordingly, could return to past relevant work in the light work category. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

---

[1] Kelly had previously applied for and was denied supplemental security income ("SSI") benefits in July 1985.

*II*

The plaintiff was thirty-six years old at the time of the ALJ's decision. She has nine years of formal education and past work experience as a school bus driver, custodian, cashier, cafeteria monitor, and manager of a jewelry store. The plaintiff claims disability resulting from degenerative disc disease and severe back pain. She has not engaged in substantial gainful activity since June 4, 2001, the date alleged as the onset of disability. In rendering his decision, the ALJ relied on medical records from Kelly's treating physicians including Bennette E. Norton, M.D.; Gregory Carradino, M.D.; Fred A. Merkel, D.O.; Cynthia Dean, F.N.P.; William Whisnant, M.D., and clinicians at Holston Valley Hospital and Indian Path Medical Center.

Based on the evidence, the ALJ found that Kelly suffers from severe musculoskeletal impairment with a history of back surgery with good results, but that her impairments do not meet or medically equal a listed impairment under the regulations governing social security. (R. at 19.) He also found that the plaintiff's subjective complaints of pain were not credible. (R. at 20.) The ALJ concluded that the plaintiff had the residual functional capacity to perform work-related activities other than those requiring medium to heavy exertion, and that some of the plaintiff's past relevant work, including cafeteria monitor and jewelry store manager, was not precluded by that limitation. (R. at 21.)

The plaintiff's medical history relevant to her onset date provides that she first complained of lumbar pain to Dr. Bennette Norton on April 9, 2001.[2] (R. at 82.) Dr. Norton scheduled an MRI of the plaintiff's back and referred her to Dr. Gregory Corradino, a neurosurgeon. (*Id.*)

Dr. Corradino saw the plaintiff for the first time on April 27, 2001. (R. at 95.) In reviewing the MRI results, the doctor diagnosed her with disc herniation causing nerve root compression and classified her as a candidate for surgery, noting Kelly preferred to wait until the end of the school year to have surgery. (R. 95-96.) Dr. Corradino saw the plaintiff again on June 14, 2001, when she reported the same symptoms and a willingness to proceed with surgery, which Dr. Corradino scheduled for June 26, 2001. (R. at 93.) Kelly stopped working on June 4, 2001. (*Id.*)

On June 26, 2001, Kelly underwent a lumbar laminectomy and diskectomy. (R. at 101-02.) She was seen on July 17, 2001, in a follow-up visit by Dr. Corradino, who noted that Kelly had done "very well" since surgery. (R. at 92.) Kelly reported residual cramping and occasional leg pain, and was encouraged to begin physical therapy, which she declined. (R. at 92.) At subsequent appointments with Dr.

---

[2] Kelly's relevant medical history prior to her onset date reveals that she reported low back pain in 1988 and underwent physical therapy. Kelly reported additional low back pain in 1997.

-4-

Corradino on August 14, September 11, and October 9, the plaintiff reported pain in her back and left leg and numbness in her left heel. (R. at 91.) She attended physical therapy briefly and had some relief, and later terminated it. (R. at 90, 89.) The plaintiff underwent an additional lumbar MRI on October 16, 2001, which indicated no "recurrent disc herniations or nerve root compressions at any level" nor stenosis, though there was a slight disc bulge. (R. at 88, 87.) In a Decenber 27, 2001 office visit, Dr. Corridino stated that there was no objective reason to explain her continued back pain, in light of the negative MRI. He ordered additional tests in an attempt to discover an explanation for her continued pain. (R. at 87.)

On January 3, 2002, the plaintiff underwent a lumbar myelogram and postmyelographic CT scan. (R. at 87.) Dr. Corradino reported that test results showed mild disc bulging but "no significant nerve root compression at any level." (R. at 86.) Dr. Corradino indicated that there was "little" additional to offer the plaintiff in terms of chronic treatment and did not schedule a follow-up visit. (R. at 86.)

From January 2002 until April 2003, the plaintiff was seen nearly monthly by either Dr. Fred A. Merkel, D.O., or Cynthia K. Dean, a nurse practitioner. At each visit, she reported chronic low back pain that was at times exacerbated by increased activity, such as cooking during the holiday season or clipping flowers. (R. at 142,

145.) She was consistently prescribed Celebrex, which she took regularly, and Lortab and Norflex to be taken as needed, as well as rest, heat massage, and modification of activities to prevent exacerbation. Further, beginning on July 2, 2002, Dr. Merkel prescribed Paxil to alleviate the plaintiff's depression. (R. at 151, 149, 148.) Kelly responded positively to Paxil and discontinued using it in September 2002. (R. at 148.)

On July 9, 2002, the plaintiff underwent an additional MRI which showed a bulging disc, but neither showed compression of the nerve root nor explained her continued postsurgical pain. (R. at 151, 150.) The plaintiff received a steroid injection and a prescription for anti-inflammatory medication on September 19, 2002 to treat an exacerbation of her condition. (R. at 147.) At a March 3, 2003 visit to Dean, the plaintiff reported that she had begun attending classes for two hours a day three days a week. (R. at 159.)

*III*

The plaintiff asserts that the Commissioner's determination regarding her alleged disability is unsupported by substantial evidence. In particular, she alleges that the Commissioner erred by failing to find that she meets or equals the requirements for a disorder of the spine, as specified in 20 C.F.R. Part 404, Subpt. P,

-6-

App. 1, §1.04 (2005). Further, she alleges that the Commissioner failed to give appropriate weight to her subjective complaints of pain. For the following reasons, I disagree.

*A*

In evaluating a claim for disability benefits, the ALJ must consider whether the claimant has an impairment that meets or equals the requirements for an impairment listed in the federal regulations. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). The claimant bears the burden of proof in establishing the necessary symptoms. *Id*.

Here, the plaintiff asserted that she suffered from disabling back pain, a neuromuscular impairment under the regulations. 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04. To prove a spinal disorder, a claimant must demonstrate "nerve root compression . . . ." *Id.* A claimant may also qualify for benefits by showing that she suffers from an unlisted impairment that is "equivalent" to a listed impairment and by presenting medical findings equal in severity to all the criteria for the most similar listed impairment. 20 C.F.R. § 416.926(a) (2005); *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). In sum, the plaintiff must show some evidence of nerve root compression in order to meet the standard for a listed neuromuscular impairment.

The ALJ here found that the plaintiff did not show evidence of nerve root compression after her surgery and thus failed to meet the standard for proving a listed

impairment. The plaintiff disputes the ALJ's finding, arguing that her medical record sufficiently exhibits the necessary symptoms to meet the listed requirements. I disagree.

I find that there is sufficient evidence on the record to support the ALJ's finding that the plaintiff did not meet the listed requirements for a spinal disorder. While it is undisputed that the tests performed on the plaintiff prior to her back surgery clearly show nerve root compression, (R. at 93, 96), there is sufficient evidence on the record to support the ALJ's conclusion that, following surgery, the plaintiff did not suffer from nerve root compression. Following her back surgery on June 26, 2001, the plaintiff underwent four tests, none of which demonstrated nerve root compression. The lumbar MRI performed on October 16, 2001 showed "no evidence" of nerve root compressions at any level. (R. at 88, 89.) The lumbar myelogram performed on January 3, 2002, also indicated no nerve root compression. (R. at 86, 87, 97-98.) The post-myelogram CT lumbar spine performed on the same day indicated no nerve root compression. (R. at 87, 89, 99.) A subsequent MRI on July 9, 2002 showed "probably no . . . neural impingement." (R. at 150, 154.) Clearly, there is sufficient evidence to support the ALJ's finding that the plaintiff failed to show evidence of the "nerve root compression" component of the listed neuromuscular impairment.

*B*

I turn next to the ALJ's finding that the plaintiff's complaints of pain were not credible. The determination of whether a claimant is disabled by pain or other subjective symptoms is a two-step process under the Act. *See Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(b), (c), 416.929(b), (c) (2005). First, there must be objective medical evidence showing the existence of an impairment that could reasonably be expected to produce the actual pain in the amount and degree alleged by the plaintiff. *See Craig*, 76 F.3d at 594-95. Only after the existence of such an impairment is established must the ALJ consider the intensity and persistence of the plaintiff's pain and the extent to which it affects her ability to work. *See id.* Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence. *See id.* at 595.

Here, the ALJ found the plaintiff's subjective pain testimony not credible because the plaintiff's daily activities were not consistent with disabling pain. (R. at 20.) As evidence, the ALJ cited the fact that the plaintiff herself testified that she engaged in daily activities like sewing, light housework, light cooking, and driving, and that she attends classes two days per week. (*Id*.) The ALJ found that these

activities are consistent with the ability to perform light exertion, and do not indicate that her pain is sufficient to prevent concentration or attention to specific tasks. (*Id*.) While the ALJ did not fully credit Kelly's complaints, he did credit them to the extent of limiting the plaintiff to light work. (R. at 19.) That finding precludes the plaintiff from performing any jobs in the medium or heavy category, including some of the jobs she had held previously. (*Id*.) Because the plaintiff's self-reports about her daily activities do not correspond with the level of disability she alleges, I find that there is substantial evidence on the record to support the ALJ's conclusion that the plaintiff's complaints of disabling pain were less than credible.

*IV*

For the foregoing reasons, the Commissioner's motion for summary judgment must be granted. An appropriate judgment will be entered.

DATED: November 4, 2005

/s/ JAMES P. JONES
Chief United States District Judge

-10-

Case 2:04-cv-00065-JPJ-PMS   Document 13   Filed 11/04/05   Page 10 of 10   Pageid#: 78